IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, <br>     Plaintiff, <br><br> v. <br><br> TAMBE METAL PRODUCTS, INC. F/K/A TAMBE H.V.A.C. SYSTEMS, INC., *et al.*, <br><br>     Defendants. | Civil Action No. 1:25-cv-29 (RDA/WEF) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Tambe Metal Products, Inc. and Tambe Enterprises, LLC (collectively, "Defendants") Motion to Dismiss the Complaint (Dkt. 6). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Plaintiff's Complaint (Dkt. 1), Defendants' Memorandum in Support (Dkt. 7), Plaintiff's Opposition Brief (Dkt. 12), and Defendants' Reply Brief (Dkt. 14), this Court DENIES the Motion for the reasons that follow.

I. BACKGROUND

A. Factual Background[1]

Plaintiff Board of Trustees, Sheet Metal Workers' National Pension Fund (the "Fund") is a multiemployer pension benefit plan established and maintained for the purpose of providing

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

pension benefits to eligible employees. Dkt. 1 ¶ 5. At all times relevant to this action, Defendants employed individuals represented by the International Association of Sheet Metal, Air, Rail, and Transportation Union, Local Union 46 (the "Union"). *Id.* ¶ 9. At all times relevant to this action, Defendant Tambe Metal Products, Inc. ("Tambe Metal") was a signatory to a Collective Bargaining Agreement with the Union (the agreement). *Id.* ¶ 10. As a signatory to the agreement, Tambe Metal was obliged to submit monthly remittance reports and fringe benefits contributions to the Fund for all hours worked or paid on behalf of Tambe Metal's covered employees within the jurisdiction of the Union. *Id.* As a signatory, Tambe Metal was also obligated to abide by the terms of the Trust Agreement that established the Fund. *Id.* ¶ 11.

On or about January 17, 2017, the Fund determined that Tambe Metal had completely withdrawn from the Fund within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1383(a). On November 19, 2020, the Fund sent a notice of withdrawal to Defendants.[2] *Id.* ¶ 19. The notice informed Defendants that their Withdrawal Liability was $1,295,931.85, amortized in a payment schedule of 43 payments of $41,338.74. *Id.* The first amortized payment was to be due on January 1, 2021, and the final amortized payment (which would be for an amount of $32,202.31) was to be due on October 1, 2031. *Id.* The amortized payment schedule was in accordance with ERISA Section 1399(c). *Id.*

---

[2] In the parties' briefing, Defendant Tambe Metal and Defendant Tambe Enterprises are sometimes referenced individually and sometimes referenced together. Plaintiff alleges that under ERISA, Defendants are jointly and severally liable for the Withdrawal Liability. Dkt. 1 ¶ 40. ERISA, 29 U.S.C. § 1301(b)(1), provides that "all . . . trades and businesses," whether incorporated or not, that are under common control, shall be treated as a single employer. *Pension Plan of Local Union 786 Ret. Fund v. Lee Lumber & Building Material Corp.*, 2021 WL 949343, at *4 (N.D. Ill Mar. 12, 2021). At the motion-to-dismiss stage, the Court accepts Plaintiff's allegation that Defendants are members of the same control group as true.

Defendants timely requested a review of the Fund's notice of withdrawal. *Id.* ¶ 21. The Fund determined that there was no basis to modify Defendants' total Withdrawal Liability assessment or the amortized payment schedule. *Id.* ¶¶ 21-22.

On January 1, 2021, Defendants failed to make their first scheduled payment. *Id.* ¶ 23. On January 14, 2021, the Fund wrote a letter notifying Defendants of their failure to make a payment under the amortized schedule and offered them a chance to cure their delinquency. *Id.* ¶ 24. The Fund also included in that letter that, under ERISA, failure to cure the delinquency would constitute a default, and the Fund would file suit against Defendant Tambe Metal to collect the full Withdrawal Liability amount. *Id.* On March 15, 2021, Defendants were in default because they did not cure the delinquency within sixty days. *Id.* ¶ 26.

On December 15, 2021, the Fund filed suit against Defendants for the defaulted Withdrawal Liability in the United States District Court for the Eastern District of Virginia. *Id.* ¶ 27 (citing *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Tambe Metal Prods., et al.*, No. 21-cv-1388 (E.D. Va.) ("*Tambe I*")). Defendant Tambe Enterprises ("Tambe Enterprises") warranted that it was barely solvent and unable to pay the Withdrawal Liability in accordance with the amortized payment schedule. *Id.* ¶ 28.

On April 8, 2022, due to Defendants' financial condition, the parties entered into a settlement agreement (the "Settlement") that compromised on the quarterly installment payments. *Id.* The Settlement required Defendants to make monthly installment payments in lieu of quarterly installment payments until the payment of the full Withdrawal Liability or December 31, 2024. *Id.* ¶ 29. *See* Dkt. 7-1 ¶ 2 ("Tambe Enterprises agrees to make, and the Trustees on behalf of the Fund agree to accept, monthly installment payments . . . in lieu of the quarterly installment payments described above . . . until the earlier of (i) payment of the Withdrawal Liability and

3

associated interest in full, or (ii) December 31, 2024 . . . ."). The monthly installment payments Defendants agreed to pay—between a minimum of $1,000 and maximum of $3,500—was based on their annual gross revenue derived from their tenant. *Id.* As a result of the Settlement, *Tambe I* was voluntarily dismissed. *See Tambe I*, Dkt. 14, Order, dated April 28, 2022.

Plaintiff asserts it was the parties' intent that if the full Withdrawal Liability had not been paid by December 31, 2024, the parties were to revisit the terms of the payment schedule. *Id.* ¶ 30. Plaintiffs further assert that the Settlement did not release Defendants' obligation to pay the full Withdrawal Liability. *Id.* ¶ 32. Plaintiff contends that as the December 31, 2024 date in the Settlement has now passed, Defendants continue to owe the full amount of the Withdrawal Liability, less the payments they have made. *Id.* ¶ 33. Pursuant to the Trust Agreement and ERISA, 29 U.S.C. § 1451(b) & (e), Plaintiff alleges Defendants are also liable for interest, liquidated damages, and reasonable attorneys' fees and costs. *Id.*

B. Procedural Background

On January 7, 2025, the Fund filed its Complaint. Dkt. 1. On January 29, 2025, Defendants filed their Motion to Dismiss. Dkt. 6. On February 12, 2025, the Fund filed their Opposition. Dkt. 12. On February 18, 2025, Defendants filed their Reply. Dkt. 14.

II. STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual

allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Cir., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). "Nevertheless, courts may consider . . . documents attached to the complaint . . . 'so long as they are integral to the complaint and authentic.'" *Hugler v. Vinoskey*, 2017 WL 1653725, at *5 (W.D. Va. May 2, 2017) (quoting *Phillips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (explaining that courts "may consider documents . . . attached to the motion to dismiss, as long as they are integral to the complaint and authentic").

### III. ANALYSIS

Plaintiff argues that the language of the Settlement merely a compromise on the payment schedule through December 31, 2024. Dkt. 12 at 4. Defendants argue that the language of the Settlement required them to pay Plaintiff lesser payments until December 31, 2024, at which point their obligations to the Fund would be extinguished. Dkt. 7 at 1-2. The Court agrees with Plaintiff.

The parties dispute the meaning of the following language in paragraph two of the Settlement:

<001>

> Tambe Enterprises agrees to make, and the Trustees on the behalf of the Fund agree to accept, monthly installment payments . . . *in lieu of* the quarterly installment payments . . . based on the annual gross revenue [listed on Tambe Enterprises' tenant's annual income tax return] until the earlier of (i) the payment of the Withdrawal Liability and associated interest in full, or (ii) December 31, 2024 . . . .

Dkt. 7-1 ¶ 2 (emphasis added).

Pursuant to the Settlement, the disputed language in paragraph two is interpreted under Virginia law except as required by ERISA or other applicable federal law. *Id.* ¶ 13. In Virginia, courts adhere to the plain meaning rule in interpreting and enforcing a contract. *LeClair v. Tavenner*, 128 F.4th 257, 262 (4th Cir. 2025). "A court's primary focus in considering disputed contractual language is to determine the parties' intention, which should be ascertained, whenever possible, from the language the parties employed in their agreement." *Pocahontas Min. Ltd. Liability Co. v. CNX Gas Co., LLC*, 276 Va. 346, 351 (2008) (internal citations omitted). "No word or phrase employed in a contract will be treated as meaningless if a reasonable meaning can be assigned to it, and there is a presumption that the contracting parties have not used words needlessly." *Multiscaff Ltd. v. Aptim Fed. Servs., LLC*, 2023 WL 5110937, at *7 (E.D. Va. Aug. 9, 2023) (internal citations omitted).

Turning to the applicable language here, the words "in lieu of" in paragraph two of the Settlement demonstrate that the only compromise reached by the parties was one to permit lower monthly installment payments rather than higher quarterly installment payments until either the payment was made in full or December 31, 2024. At that time, the Settlement agreement expired. This is the plain meaning of the term "in lieu of." *Black's Law Dictionary* 941 (11th ed. 2019) ("in lieu of" means "[i]nstead of or in place of"). Thus, if payment was not made in full before December 31, 2024, Defendants were required to resume their payments to Plaintiff in accordance with the payment schedule originally assessed on November 19, 2020. Dkt. 1 ¶ 19.

Further supporting this Court's interpretation of the plain language of section 2 of the Settlement is the lack of any release of liability for any payments not made by December 31, 2024. A release is a writing providing that a duty owed to the maker of the release is discharged immediately. *U.S. v. Centex Const. Co., Inc.*, 638 F. Supp. 411, 413 (W.D. Va. 1985) (citing Restatement, *Contracts* 2d § 284(1)). "A release requires an unequivocal act expressing or implying an intent to release." *Id.* (citing *State ex. Rel Ashworth v. State Road Comm'n*, 147 W. Va. 430, 442 (1962)). Under Virginia law, a release is "governed by the intention of the parties *as expressed in the document* they have executed." *Berczek v. Erie Ins. Grp.*, 259 Va. 795, 799 (2000) (internal citations omitted) (emphasis added).[3] Here, there is no written language in the Settlement unequivocally expressing—or even implying—an intent to release Defendants from liability from the full Withdrawal Liability still outstanding on December 31, 2024. In fact, the word "release" is not mentioned anywhere in the settlement. Dkt. 7-1; *see Operating Engineers' Pension Trust Fund v. Clark's Welding and Machine*, 688 F. Supp. 2d 902, 910 (N.D. Cal. 2010) ("Here, the Court agrees with Plaintiffs that this Stipulation is not reasonably susceptible to the interpretation that it released Defendants from withdrawal liability. The only place where the word 'release' occurs in the Stipulation is paragraph 21, where it is mentioned in the context of an integration clause clarifying that any other agreements or understandings of the parties are superseded by this Stipulation."). If it was the parties' intent to release Defendants from liability, such language

---

[3] Similar to Virginia jurisprudence, under ERISA, "[a] release . . . settles a dispute that a fiduciary did not fulfill its responsibility or duty on a given occasion." *Leavitt v. Nw. Bell Telephone Co.*, 921 F.2d 160 (8th Cir. 1990). When ERISA withdrawal liability settlement agreements provide for a clear release, Courts have enforced the settlement. *Central States, Se. & Sw. Areas Pension Fund v. Art Pape Transfer, Inc.*, 881 F. Supp. 1168, 1171 (N.D. Ill. 1995) (enforcing a settlement that provided the parties "now desire to compromise and settle all claims . . . and the Pension Fund desires to fully and finally release any and all claims arising out of or in any way connected with . . . [the] Withdrawal Liability.").

should have been included in the Settlement. Indeed, the Settlement makes clear that the provisions within it constitute "the sole and complete understanding and agreement between the Parties with respect to the matters set forth in the Settlement Agreement." Dkt. 7-1 ¶ 16. The absence of any such language indicates that the parties' agreement, consistent with the "in lieu of" language, was much more limited.

Seeking to avoid this conclusion, Defendants argue that that they owe Plaintiff nothing as of December 31, 2024, after following the lower monthly installment payments. Their argument fails to persuade because it fails to give effect to key language in the Settlement. As discussed *supra*, the Settlement does not, as Defendants contend, extinguish their obligations to Plaintiff, for there is no release provision. Moreover, if the Court were to accept Defendants' proposed interpretation, it would render superfluous the "earlier of" language. Dkt. 7-1 ¶ 2. No sensible company would pay the outstanding liability in full early if it could avoid paying more by simply waiting. Thus, the language providing that the monthly payments last only until the "earlier of" clearly precludes Defendants' proposed interpretation that payments until the December 31, 2024 date eliminated Defendants' liability. Such a view would deviate from the Court's obligation "to determine the parties' intention . . . from the language the parties employed . . . in their agreement." *Pocahontas Min. Ltd. Liability Co.*, 276 Va. at 351. The Court therefore declines to endorse such a result. *See, e.g., Diebold Enter. Sec. Sys., Inc. v. Low Voltage Wiring, Ltd.*, 597 F. App'x 475, 485 (10th Cir. 2015) ("We reject interpretations of a contract that do not give effect to relevant clauses."); *Systemized of New England, Inc. v. SCM, Inc.*, 732 F.2d 1030, 1034 (1st. Cir. 1984) ("[A] court must favor interpretations which give meaning and effect to every part of a contract and reject those which reduce words to mere surplusage."); *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 176 F. Supp. 3d 949, 955 (E.D. Cal. 2016) ("Contract interpretations that deprive words

of meaning are to be avoided."). For all of these reasons, this Court will deny the Motion to Dismiss.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED Defendant's Motion to Dismiss (Dkt. 6) is DENIED; and it is

FURTHER ORDERED that a scheduling order will issue promptly.

It is SO ORDERED.

Alexandria, Virginia
July 16, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge

9